UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEJANDRO DOMINGO MALVAR
EGERIQUE,

    Plaintiff,

    v.

EZRA CHOWAIKI, DAVID BENRIMON
FINE ART LLC, DAVID BENRIMON,
LINDA BENRIMON also known as LINDA
ROSEN, ALEX BENRIMON, LAUREN
BENRIMON, PIEDMONT CAPITAL
LLC, AVICHAI ROSEN, and JOHN DOES
1-10.

    Defendants.

JURY TRIAL DEMANDED

**COMPLAINT**

---

Plaintiff, **ALEJANDRO DOMINGO MALVAR EGERIQUE** ("Alejandro Malvar" or

"Mr. Malvar"), through his attorney, as his complaint in this action, alleges:

## JURISDICTION and VENUE

1.  This is a civil action brought under the provisions of 18 U.S.C. Chapter 96, 18

U.S.C. §§ 1961-1968 – The Racketeer Influenced and Corrupt Organizations (RICO) Act.  As

such, this Court has original jurisdiction over this action, 28 U.S.C. § 1331, and supplemental

jurisdiction under 28 U.S.C. § 1367 (a) over the other claims that are related to the RICO claims

and are part of the same case or controversy as the RICO claims.  In addition, this Court has

original jurisdiction over this case because plaintiff is a citizen and subject of a foreign state (the

Kingdom of Spain), and is not a permanent resident of the United States, and defendants are each

citizens or permanent residents of the United States, and the amount in controversy exceeds

$75,000.00  exclusive of interest and costs.  28 U.S.C. § 1332 (a) (2).

2.      Venue is proper in this district because at least one defendant resides in this district (all are resident in this State, or were residents in this State at the time of the commission of most of the acts and omissions set out below), and because a substantial part of the acts or omissions giving rise to the claims occurred in this district, and because all defendants are subject to this Court's personal jurisdiction in this district.  28 U.S.C. § 1391.

## PLAINTIFF AND HIS TWO WORKS OF ART

3.      Plaintiff is a citizen and resident of Spain, and is the victim of defendants' pattern of racketeering activity, unlawful loans, unlawful acts, conversions, conspiracy, and fraudulent acts and omissions, *etc.*; and plaintiff was injured thereby.

4.      Plaintiff is the owner of two works of art, *le Gueridon* by Pablo Picasso ("the Picasso" or "*le Gueridon*"), and *Composition avec Profil de Femme* [Composition with a Woman's profile/face], also known or described as *JAZZ-recto JOUER DE CONTREBASSE ET SCENE DE CIRQUE-verso* by Fernand Leger ("the Leger").  Plaintiff acquired both works of art at a sale at Sotheby's in London on February 6, 2007.  Copies of the invoices from Sotheby's to plaintiff for those two works of art, together with proof of payment, are attached as *Exhibit 1* to this Complaint.  As set out in this Complaint, defendants by wire fraud and other fraudulent and unlawful violations, converted plaintiff's two works of art to their benefit, and to plaintiff's detriment.

## DEFENDANTS

5.      Defendant **EZRA CHOWAIKI** is a convicted criminal, who, on May 3, 2018, pled guilty in this Court to wire fraud, 18 U.S.C. § 1343, relating to the acts or omissions in this action, and on September 27, 2018 was sentenced and convicted.  *United States of America v. Ezra Chowaiki*, 18 Crim. 323 (JSR) (Judge Rakoff) (sometimes also referred to in this Complaint

2

as "the Criminal case"), Minute orders following Docket Nos. 15 and 75, and Docket Nos. 76-78.  Upon information and belief, he was the chief executive officer and one of the owners of Chowaiki & Co. Fine Art Ltd. ("Gallery"), which operated an art gallery in this district.  On November 13, 2017, the Gallery filed a voluntary petition under Chapter 7 of the Bankruptcy Code in Bankruptcy Court in this district.  *In re: Chowaiki & Co. Fine Art Ltd.*, Case No. 17-13228 (MKV) (sometimes also referred to in this Complaint as "the Bankruptcy case").  The Gallery is not a defendant in this action.

6.       Defendant **DAVID BENRIMON FINE ART LLC** operates an art gallery in this district at the Crown Building, 730 Fifth Avenue, 7th Floor New York, New York 10019.

7.       Defendant **DAVID BENRIMON** is the "Director" of defendant **DAVID BENRIMON FINE ART LLC,** and upon information and belief, its chief executive officer, and one of its beneficial owners, members, officers, and managers.  Upon information and belief, defendant **DAVID BENRIMON** is a long-time friend, colleague, and business associate of defendant **EZRA CHOWAIKI.**

8.       Defendant **LINDA BENRIMON also known as LINDA ROSEN,** is (as Linda Benrimon) the "Executive Director" of defendant **DAVID BENRIMON FINE ART LLC**, in this district.  Defendant **LINDA BENRIMON also known as LINDA ROSEN,** is the daughter of defendant **DAVID BENRIMON,** and the spouse of defendant **AVICHAI ROSEN.**

9.       Defendant **LAUREN BENRIMON** is the "Fine Art Advisor" of defendant **DAVID BENRIMON FINE ART LLC,** and upon information and belief, one of its beneficial owners, officers, executives, and managers.  Upon information and belief, she is also the daughter of defendant **DAVID BENRIMON,** and sibling of defendants **LINDA BENRIMON also known as LINDA ROSEN** and **ALEX BENRIMON.**

10.     Defendant **ALEX BENRIMON** is the "Director of Sales" of defendant **DAVID BENRIMON FINE ART LLC,** and upon information and belief, one of its beneficial owners, officers, executives, and managers.  He is also the son of defendant **DAVID BENRIMON,** and the sibling of defendants **LINDA BENRIMON also known as LINDA ROSEN,** and **LAUREN BENRIMON.**

11.     Defendant **PIEDMONT CAPITAL LLC** is a New York limited liability company whose address, according to the New York State Department of State, Division of Corporations, is "C/O AVICHAI ROSEN, 42 W. 17TH ST. #7A, NEW YORK, NEW YORK 10011," in this district.  This address is one of at least two apartments and personal residences defendants **AVICHAI ROSEN** and **LINDA BENRIMON also known as LINDA ROSEN** maintain in this district.

12.     Upon information and belief, defendant **PIEDMONT CAPITAL LLC** has and had no office or place of business, no employees, no warehouse or other storage space, no assets, no money, no business, no clients, no useable website, and no public telephone or e-mail.  In a petition verified by its "managing member," defendant **AVICHAI ROSEN** under penalties of perjury, submitted to this Court on July 10, 2018, in *United States of America v. Ezra Chowaiki, supra,* Document 57, defendants **AVICHAI ROSEN** and  **PIEDMONT CAPITAL LLC** describe its business as "a boutique investment manager specializing in strategic investments in alternative asset classes.  A significant portion of Piedmont's business consists of making loans secured by works of art.  Through this business, Piedmont provides necessary liquidity to art dealers, collectors, and other participants in the art market" *Id.* at *p.* 1, ¶ 2.

13.     Defendant **AVICHAI ROSEN** is the "Managing Member," owner, officer, and executive of defendant **PIEDMONT CAPITAL LLC,** whose address is care of himself at one

of his at least two apartments in this district.  He is also, *inter alia*, the spouse of defendant

**LINDA BENRIMON also known as LINDA ROSEN**, the son-in-law of defendant **DAVID**

**BENRIMON,** and brother-in-law of the other individual **BENRIMON** defendants.

14.     **DEEFENDNATS JOHN DOE 1-10** are additional persons and/or entities, whose

identities are currently unknown to plaintiff and who, through their own actions, or their actions

through agents, conspired with and/or participated in the pattern of racketeering acts and activity,

the collection of unlawful debt, and the other fraudulent and unlawful acts and activity set out

below.  When and if their identities are discovered, their names will replace the John Does in the

caption.

15.     By virtue of their actions, activities, and responsibilities, and their executive and

managerial roles and ownership and management interests and responsibilities, as set out above,

and otherwise, each of the individual defendants knew about, benefited from, and had the

responsibility of approving, initiating, controlling, and managing – and did approve, initiate,

control, and manage – the actions and omissions ascribed to them and the other defendants,

below.

16.     Each of the named defendants transacts his/her/its business in this district and

may be found in this district.  All defendants reside in New York State, or in the case of

defendant **EZRA CHOWAIKI**, resided in, and transacted his business in, New York State and

this district during most of the acts or omissions set out below.

## THE RICO ENTERPRISES IN THIS COMPLAINT

17.     In this Complaint, plaintiff alleges three distinct RICO Enterprises, as defined in

18 U.S.C. § 1961 (4):  (1) David Benrimon Fine Art LLC, (2) the "Benrimon-Chowaiki

Enterprise," which, as set out below, is a union or group of individuals associated in fact

although not a legal entity, and (3) defendant EZRA CHOWAIKI's Gallery (Chowaiki & Co. Fine Art Ltd.**).**

18.     The Benrimon-Chowaiki Enterprise consists of all defendants including the **JOHN DOE** defendants.  The Benrimon-Chowaiki Enterprise is separate and distinct from both the individuals and entities comprising it, and the individuals and entities controlling it by a pattern of racketeering activity and the collection of unlawful debt.  The members of the Benrimon-Chowaiki Enterprise share a common purpose to engage in the particular fraudulent course of conduct alleged in this Complaint, and the members of the Benrimon-Chowaiki Enterprise work together to fraudulently achieve such purposes.  Such purposes include, *inter alia*, obtaining works of art by fraud; fraudulently selling those works of art; fraudulently mortgaging those works of art; fraudulently selling those works of art or other works of art which the Enterprise did not have title to or possession of, or the legal ability to sell or convey; transporting fraudulently acquired works of art overseas; fraudulently concealing the source of funds to do the foregoing; laundering the proceeds of such fraudulent activity; and fraudulently concealing by a variety of methods the fraudulent nature of what it was and is doing.  The business of the Benrimon-Chowaiki Enterprise was and is to monetize the fraudulent acquisition and disposition of art without regard to which legal entity or individual fraudulently acquired/acquires the art; disposed/disposes of the art; disposed/disposes of, or laundered/launders the proceeds; or concealed/conceals the transaction.  That is, the business of the Benrimon-Chowaiki Enterprise was and is to fraudulently obtain, sell, mortgage, and transport art, and to hide the source of funds and launder the proceeds, regardless of who possesses the art or fraudulently acquired or sold it.  The Benrimon-Chowaiki Enterprise operates regardless of whether Chowaiki's Gallery or David Benrimon Fine Art LLC, or some

other individual or entity initially fraudulently acquires/acquired or disposes/disposed of the art. The Benrimon-Chowaiki Enterprise consists of a group of persons, associated together as a continuing unit, for the common purpose of engaging in the interstate and international fraudulent acquisition and disposition of art and art investments. The Benrimon-Chowaiki Enterprise continues to operate and function today in a manner violating the RICO statute.

19.     Each of the RICO Enterprises is engaged in interstate and foreign trade, and their activities affect interstate and foreign trade.

20.     The defendants' violations required and require a high degree of planning, cooperation,  coordination, and concealment.

21.     During the period of their association and continuing today, the defendants' actions were specifically directed at the plaintiff and others, who transacting business with one or more of the defendants made plaintiff and other victims targets of opportunity.

22.     In the case of each such RICO Enterprise, the racketeering acts and activities and the collection of unlawful debt, were related in their purposes, results, participants, victims, methods of commission and distinguishing characteristics, and were not isolated events. *I.e.,* the common and unifying purpose, results, *etc.* were to fraudulently acquire the victims' works of art, fraudulently dispose of them, fraudulently conceal and hide what occurred, and launder the proceeds, if possible. Central to the successful operation of this scheme is that one entity or individual not do *all* the fraudulent acquisition, sales, disposition, transportation, mortgaging loansharking, *etc.*, of all the works of art, but that these functions be spread out – and thus better concealed – among several different parties. This is exactly what occurred in this case.

23.     Because, and as set out below, the pattern of racketeering acts and activity is still continuing; and  because (except for the Gallery) the RICO Enterprises are continuing; and in the

case of the Gallery, even the pattern of racketeering acts and activity is continuing; and  because only one of its participants, defendant **EZRA CHOWAIKI**, has thus far been caught and convicted; and because defendant **EZRA CHOWAIKI** is a replaceable member of the RICO Enterprises, this criminal activity and pattern of racketeering acts and activity, described below, is continuing and will not cease until all defendants are brought to justice.

24.     In the case of each RICO Enterprise, plaintiff was directly injured because his two works of art, the Picasso and the Leger, were each fraudulently acquired, and subsequently fraudulently sold and fraudulently transported overseas, directly as a result of, and as part of, the pattern of racketeering acts and activity and as a result of the collection of an unlawful debt, all as alleged in this Complaint.

25.     In the case of each RICO Enterprise, as set out in this Complaint, each of the defendants  was employed by or associated with such RICO Enterprise, and each defendant conducted or conducts or participated or participates, directly or indirectly, in the conduct of such RICO Enterprise's affairs through a pattern of racketeering acts and activity and by the collection of unlawful debt, in violation of 18 U.S.C. § 1962 (c), and/or conspired to do so in violation of 18 U.S.C. § 1962 (d), and plaintiff was directly harmed by the fraudulent acquisition and disposition of his *Picasso* and *Leger*, and by the subsequent concealment of those fraudulent and illegal activities, all of which are continuing.

**INTRODUCTION**

26.     Plaintiff alleges a right of recovery under 18 U.S.C. § 1962 (c) in that plaintiff was injured by defendants' conduct or participation, directly or indirectly,  in the foregoing RICO Enterprises' affairs, through a pattern of Racketeering Acts and Activity and collection of

an unlawful debt, 18 U.S.C. § 1962 (c), entitling plaintiff to recover from each such defendant. 18 U.S.C. § 1964 (c).

27.     In addition, each of the defendants conspired with each other, and others, to do the foregoing, and  therefore violated 18 U.S.C. § 1962 (d), entitling plaintiff to recover from each such defendant.  18 U.S.C. § 1964 (c).

28.     As more fully set out below, each of defendants was in the business of buying and selling art, either for his/her/its own account or on behalf of others as an agent, broker, consignee, bailee, auctioneer, commission agent, or similar or other role.

29.     Each of the defendants engaged in such business, at least on occasion, in a fraudulent manner, including (depending on the defendant) by, *inter alia*:

a.     acquiring the art from innocent third parties under the false pretenses that defendant(s) would sell the art on behalf of such third parties, but never intending to do so, and not doing so, and instead selling the art and keeping the proceeds for him/her/it/them-selves;

b.     selling works of art which defendant(s) never possessed or owned, and never intended to deliver to the buyer, and instead selling the same work of art to others;

c.     selling the same work of art to different buyers, while concealing from each such buyer the fact that the same piece of art was owned, sold or being sold to the others;

d.     selling and buying works of art (and/or lending money using art as collateral) knowing that the works of art could not legally be sold, bought, or hypothecated;

e.  investing or selling investments in works of art knowing that investments in those works of art could not legally be sold or bought and/or selling more than 100% of the shares of those works of art;

f.  establishing and/or utilizing shell companies or entities to hide or disguise the foregoing activities; and

g.  transporting unlawfully converted, or fraudulently acquired works of art across state and national borders.

30.  Each of the defendants, when so doing, acted with others, and/or with other defendants.

31.  Each of the defendants actively and regularly did business with each other, were related by blood or marriage (except with defendant **EZRA CHOWAIKI**), were in the same business, were long-time friends, neighbors, and/or colleagues, and each knew or should have known about the impermissible, fraudulent, and/or illegal nature of the activities they were conducting with the others.

32.  These fraudulent and other complained-of activities began, in the case of defendant **EZRA CHOWAIKI,** no later than January 2005; and in the case of the remainder of the defendants, no later than July 2013; and in the case of each of them, is continuing.  Plaintiff and many other parties were injured as a result of such fraudulent and otherwise unlawful activities.

33.  No later than the summer or early fall of 2017, all defendants joined together in a conspiracy to jointly continue defrauding the customers of defendants and of defendant **EZRA CHOWAIKI**'s Gallery, and continued such fraudulent, impermissible, and/or illegal activities together by taking actions in furtherance of the conspiracy and in furtherance of the preceding

fraudulent activities.  At that time, each defendant knew or should have known of the fraudulent, impermissible and/or illegal and unlawful activities of the others; and each knowingly conspired with each other to continue defrauding others, especially those, such as plaintiff, who, in good faith, had given art works to defendant **EZRA CHOWAIKI**'s Gallery.  In so doing, each of the defendants knew and intended that others, including plaintiff, would be harmed.

34.     Specifically as it relates to plaintiff's injuries in this case, each of the defendants conspired together, and/or knowingly and intentionally joined the existing fraudulent and illegal activities of the other defendants, *inter alia*, to fraudulently obtain plaintiff's works of art by the false pretext that the artworks were to be sold on consignment with the proceeds to be paid to plaintiff; while, instead, never intending to do so, and disposing or selling these artworks fraudulently, and keeping the proceeds for themselves.  In so doing they violated numerous provisions of law, including those set out in 18 U.S.C. § 1961 (1) ("Racketeering Acts" and "Racketeering Activity"), and plaintiff was thereby injured.  Each such Racketeering Act and Racketeering Activity is also a "Specified Unlawful Act" for the purposes of 18 U.S.C.  §§ 1956 and 1957.

## THE ACTIONS IN THIS CASE

A.

## The Businesses and Activities of Defendant EZRA CHOWAIKI.

35.     Defendant **EZRA CHOWAIKI** formed his Gallery, initially known as Chowaiki Mosionzhnik Gallery Ltd., with two other partners on January 14, 2005. *Mosionzhnik v. Chowaiki, et al.,* 41 Misc. 3d 822, 825, 972 N.Y.S. 2d 841, 844 (New York Supreme Court, New York County, 2013).

36.     Just prior to that formation, defendant **EZRA CHOWAIKI** separately incorporated Zelco Ltd. in December 2004 for the purposes of obtaining a stolen or lost piece of art.  The Supreme Court of the State of New York found that "Zelco was never operated as an independent company, its finances were completely comingled with the Gallery's and the Gallery directly funded [Zelco's operations]."  *Mosionzhnik, supra,* 41 Misc. 3d at 827, 972 N.Y.S. 2d at 845-46.

37.     Defendant **EZRA CHOWAIKI** immediately began using alter ego operations to conceal his operations and activities, and protect his assets, while never separating operations or funds between these entities.  *Mosionzhnik, supra.*

38.     Defendant **EZRA CHOWAIKI**, began the operations of his Gallery in 2005 with illegal activity, receiving and benefitting from kickbacks, concealing the proceeds of illegal operations in foreign accounts, obtaining art by false and fraudulent pretenses using the wires and mails, transporting stolen art across state borders and national frontiers, setting up front corporate entities, and using pieces of art belonging to others as "collateral" to obtain money for himself, while knowing it was illegal for him to do so.  *See, e.g., Mosionzhnik, supra.*  In *Mosionzhnik,* Justice Kornreich found and held that "the record unequivocally establishes that the legality of the Gallery's business practices ranged from the questionable...to the impermissible (using client property as loan collateral)," and that "There is also no question of fact that Chowaiki knew of the questionable nature of Mosionzhnik's conduct, even if he did not know every detail..."  *Id.,* 41 Misc. 3d 822 at 830-31, 972 N.Y.S. 2d at 848.

39.     The total amount of the consigned art used as collateral without the clients' knowledge or consent was $13 million. *Mosionzhnik, supra,* 41 Misc. 3d at 826, 972 N.Y.S. 2d at 845.

40. Upon information and belief, most of the victims were chosen by defendant **EZRA CHOWAIKI**, because they were foreign residents and/or citizens, unfamiliar with the United States legal system and its requirements.

41. Upon information and belief, the defrauding of his clients by obtaining works of art under false pretenses while intending to either sell or use those works of art as collateral for loans, the use of Zelco and other front companies to do so, the conversion and sale of the art from and to abroad, the payment for the acquisition and/or sale of the art abroad by defendant **EZRA CHOWAIKI** and his Gallery, the intentional transmission of illegal proceeds abroad with the intent to conceal their source, and the transmission of the art abroad, were done by wire and mail, and all the foregoing constituted numerous and repeated violations by defendant **EZRA CHOWAIKI** of 18 U.S.C. sections 1341 (relating to mail fraud), 1343 (relating to wire fraud), 1956 (relating to the laundering of monetary instruments, because he knew that the proceeds were derived from Specified Unlawful – *i.e.*, RICO – Acts, and he engaged in financial transactions with the specific intent to promote those acts and/or to conceal or disguise those acts), and 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity because the funds and/or property were worth more than $10,000.00, and he knew that that the property was derived from Specified Unlawful – *i.e.* RICO - Acts), and 2314 and 2315 (relating to interstate transportation of stolen property), each and all the foregoing constituting Racketeering Acts and Activity and Specified Unlawful Acts. Upon information and belief, these Racketeering Acts and Activities were repeated and continuous from the Gallery's establishment in January 2005 at least until July 23, 2008, the date plaintiff was terminated in *Mosionzhnik, supra,* and, upon information and belief, has been continuous since then and never ended.

42.    All the other defendants in this case, each of whom regularly did business with defendant **EZRA CHOWAIKI** and who were his business colleagues, neighbors, and friends, knew of such illegal activity at least as early as July 20, 2009, the date Ms. Mosionzhnik filed her lawsuit, and July 29, 2013, the date of Justice Kornreich's opinion in *Mosionzhnik, supra,* and the simultaneous mass coverage in the art media of that lawsuit and opinion.

43.    In addition, defendant **EZRA CHOWAIKI**, *with others*, continued that illegal practice "through the use of e-mail messages, telephone calls, and electronic fund transfers, [and] defrauded purchasers and sellers of fine art by deceiving them into sending funds or artwork to his gallery in New York, New York under the false pretenses that CHOWAIKI would either use the funds to purchase works of art, or that he would sell the artworks that had been provided to him when, in truth and in fact, CHOWAIKI never made such purchases and sales." *United States v. Ezra Chowaiki, supra*, Sealed and sworn Criminal Complaint, ¶ 3 (emphasis supplied), Doc. 1, (*see also* ¶¶1-2).

44.    Upon information and belief, an important component of defendant **EZRA CHOWAIKI's** continuing fraud and illegal practice was intentionally to obtain art, supposedly on "consignment" from foreign citizens and residents who were not in the United States.  These foreigners would not know what defendant **EZRA CHOWAIKI** was doing with the art, and were unfamiliar with United States federal and state laws regarding consignment and filing security interests under the Uniform Commercial Code ("UCC").  The foreign domiciles of the art owners and their unfamiliarity with the UCC, were intended to allow defendant **EZRA CHOWAIKI** more easily and unlawfully to dispose of the art, or unlawfully use it as collateral, and to more easily conceal the illegal nature of his actions.

45.     To that end, defendant **EZRA CHOWAIKI** recruited and utilized several agents abroad to obtain works of art abroad to be sent to his Gallery, supposedly on "consignment."

46.     On May 3, 2018, defendant **EZRA CHOWAIKI** pleaded guilty in this court to the following one count of wire fraud, 18 U.S.C. § 1343:

> 1.     From at least in or about 2015 through at least in or about 2017, in the Southern District of New York and elsewhere, EZRA CHOWAIKI, the defendant, willfully and knowingly, having devised a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, CHOWAIKI, through the use of e-mail messages, telephone calls, and electronic fund transfers, defrauded purchasers and sellers of fine art by deceiving them into sending funds or artwork to his gallery in New York, New York under the false pretenses that CHOWAIKI would either use the funds to purchase works of art or that he would sell the artworks that had been provided to him.

*United States of America v. Chowaiki, supra,* 18 Crim. 323, Docket No. 14.

47.     As part of his plea and conviction, defendant **EZRA CHOWAIKI**, made the following Admissions, under oath, in open court, *id.,* Transcript, Doc. 20 at 14:

> Specifically, I defrauded purchasers and sellers of artwork and had them send funds or artwork to my gallery, known as Chowaiki and Company, under false pretenses, representing that the funds would be used to purchase artwork for which funds were not used or that paintings would be held by the gallery on consignment for sale, but, in fact, some of the paintings were used by me as collateral for monies that I obtained from others, and this was done without the consent or the permission of the owner, of the artwork.
> …
> At the time I engaged in these transactions, I knew that what I was doing was wrong and illegal.

The Court asked defendant about his transactions with the victims (*id.* at 14-15):

> [The Court]:   And other times, they gave you art which they thought they were giving you to be sold, but in fact you were using for collateral or for other purposes, yes?

Defendant answered "Yes."

The Court then asked:

[The Court]:   And you knew that when you were doing this, that this would likely bring harm to the people you were lying to, yes?

Defendant answered "Yes."

48.     In addition, as part of his guilty plea and resulting conviction, defendant **EZRA CHOWAIKI** pled guilty to the forfeiture of at least 25 works of art he had stolen or otherwise fraudulently acquired, worth over $16.6 million, and agreed to make restitution for having defrauded his victims.   Plaintiff's Picasso's, *le Gueridon*, was listed as work of art "(i)" as having been stolen by defendant **EZRA CHOWAIKI**.   *United States v. Chowaiki, supra*, Doc. 16.

49.     In addition, in the Bankruptcy case, 69 claims totaling $56,249,794.49 were made against the Gallery, some of them duplicative, but almost all of them made by claimants who were defrauded by defendant **EZRA CHOWAIKI**. *See Claims Register* in the Bankruptcy case.

50.     Thus defendant **EZRA CHOWAIKI** admitted under oath that he defrauded plaintiff and dozens of others by obtaining their art, collectively worth in the dozens of millions of dollars,  by the false pretenses that he was obtaining their works of art on consignment, whereas he actually sold them or used them as collateral, and kept the proceeds for himself.  This constituted numerous and repeated violations by defendant **EZRA CHOWAIKI** of 18 U.S.C. sections 1341 (relating to mail fraud), 1343 (relating to wire fraud), 1956 (relating to the laundering of monetary instruments, because he knew that the proceeds were derived from Specified Unlawful – *i.e.*, RICO – Acts,  and he engaged in financial transactions with the specific intent to promote those acts and/or to conceal or disguise those acts, and), 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity because the funds and/or property were worth more than $10,000.00, and he knew that that the

property was derived from Specified Unlawful – *i.e.* RICO - Acts), and 2314 and 2315 (relating

to interstate transportation of stolen property), each and all the foregoing constituting

Racketeering Acts and Activity and Specified Unlawful Acts.

**B.**

**The Business and Activities of Defendants other than Defendant EZRA CHOWAIKI.**

51.     While defendant **EZRA CHOWAIKI** was engaged in such fraudulent activity,

the remaining defendants in this case – long-time business colleagues, friends, and neighbors,

who regularly did business with **EZRA CHOWAIKI** and his Gallery – were engaged in the

business of buying and selling works of art.

52.     On February 2, 2012, Benrimon Contemporary LLC, an art gallery in this district,

upon information and belief, owned or controlled by the Benrimon defendants and Leon

Benrimon (defendant **DAVID BENRIMON**'s son), and whose physical location is that of

defendant **DAVID BENRIMON FINE ART LLC,** and whose management, control, book-

keeping and staff is that of defendant **DAVID BENRIMON FINE ART LLC**, sold an Andy

Warhol painting and prints to Marc Latamie, a citizen and resident of France, and DM Fountain,

Inc. for $1,750,000.00.   The purchasers paid the purchase price, but neither the defendants in

this case nor Leon Benrimon, nor Benrimon Contemporary LLC ever delivered the prints (worth

$750,000.00 pursuant to the contract) to the purchasers.

53.     Upon information and belief, during the foregoing transaction, the purchasers of

the Warhols, at all times negotiated with, *inter alia*, defendants **DAVID BENRIMON FINE

ART LLC, DAVID BENRIMON, LINDA BENRIMON also known as LINDA ROSEN**,

Leon Benrimon, and with their family friend, neighbor, then long-time employee and co-worker,

Dustin Adam Stein, for the delivery of the Warhol prints. Upon information and belief, all of

these people purported to have authority and to speak on behalf of the seller in that transaction.

See, e.g., Complaint in *Latamie, et al v Benrimon Contemporary LLC, David Benrimon Fine Art*

*LLC, Leon Benrimon and David Benrimon,*  650521/2016 (Supreme Court. New York County),

ECF Doc. No. 2.

54.    Upon information and belief, Benrimon Contemporary LLC never had ownership,

custody, or control of the Warhol prints, yet defendants **DAVID BENRIMON FINE ART**

**LLC, DAVID BENRIMON,** and **LINDA BENRIMON also known as LINDA ROSEN**

continued to falsely, and fraudulently, and repeatedly promise (in person, and by wire, and

otherwise) to Mr. Latamie that they would deliver the Warhol prints to purchasers.  Such

assurances were made repeatedly during 2013 and 2014.  Complaint, *id.*

55.    In fact, rather than deliver the Warhols to the purchaser, upon information and

belief, defendants **DAVID BENRIMON FINE ART LLC, DAVID BENRIMON,** and **LINDA**

**BENRIMON also known as LINDA ROSEN** were selling and delivering the very same

Warhol prints, supposedly sold to Latamie but never delivered to him, to others across state lines.

*See, e.g. id at* ¶ 36.   Upon information and belief, all the defendants other than **EZRA**

**CHOWAIKI** knew about this, approved it, participated in this transaction, and benefited from it.

56.    Each of the foregoing actions constituted violations by all of the defendants other

than **EZRA CHOWAIKI** of 18 U.S.C. sections 1343 (relating to wire fraud), 1956 and 1957

(relating to the laundering of monetary instruments, *etc.*, because defendants (other than EZRA

CHOWAIKI) knew the 1.75 million dollars, they obtained from Mr. Latamie was being

transported from abroad to the United States in furtherance and part of Specified Unlawful

Activity, and because those funds were then deposited in an account and were subsequently used

to fund or purchase other activities or merchandise, thus disguising the illegal source of those

funds, and because they knew that the proceeds were derived from Specified Unlawful – *i.e.*, RICO – Acts, and they engaged in financial transactions with the specific intent to promote those acts and/or to conceal or disguise those acts, and because they knew that that the property was derived from Specified Unlawful – *i.e.* RICO - Acts),), and sections 2314 and 2315 (relating to interstate transportation of stolen property). All the foregoing are violations of 18 U.S.C. § 1961 (1), and are Racketeering Acts and Activity.

## C.

### Defendants' Fraudulent Acquisition of Plaintiff's Works of Art.

57.     Plaintiff **ALEJANDO MALVAR EGERIQUE**'s purchase of both the Picasso and Leger from Sotheby's in London on February 6, 2007 (*see* ¶ 4, above, and *Exhibit 1*) was for use in his home and household, and from immediately after his purchase of the Picasso and the Leger and for almost eight years thereafter, until they were sent to defendant **EZRA CHOWAIKI**'s Gallery in New York in April 2015, both the Leger and the Picasso were on plaintiff **ALEJANDO MALVAR EGERIQUE's** wall in his house in Spain, and used for household purposes.

58.     Upon information and belief, in his attempts to further his scheme to fraudulently obtain works of art from foreigners and more easily fraudulently dispose of them, defendant **EZRA CHOWAIKI** appointed several agents to obtain works of art in Europe for his Gallery. One such agent, Tiago Feijoo Pinto, on behalf of defendant **EZRA CHOWAIKI**, contacted plaintiff **ALEJANDO MALVAR EGERIQUE**'s brother, Benito Malvar, in an attempt to obtain, supposedly on "consignment," some of plaintiff **ALEJANDO MALVAR EGERIQUE**'s works of art, then in plaintiff's home in Spain, for defendant **EZRA CHOWAIKI's** Gallery in this district.

59.    Based on defendant **EZRA CHOWAIKI's** representations (both directly and through Tiago Feijoo Pinto) by wire to Benito Malvar (who was acting on behalf of, and at the instructions and directions of his brother plaintiff **ALEJANDO MALVAR EGERIQUE**), that defendant **EZRA CHOWAIKI** would accept the paintings on "consignment" to sell in his Gallery on behalf of plaintiff and return the paintings to plaintiff at any time either of the Malvar brothers demanded, thereby terminating the supposed "consignment," on April 27, 2015, Benito Malvar, at plaintiff **ALEJANDRO DOMINGO MALVAR EGERIQUE's** instructions, authority and behalf, "consigned" the Picasso and the Leger to defendant **EZRA CHOWAIKI's** Gallery in this district.

60.    The forgoing repeated representations by defendant **EZRA CHOWAIKI** were fraudulent at the time made in order to induce plaintiff **ALEJANDRO DOMINGO MALVAR EGERIQUE** to part with the Picasso and Leger, to plaintiff's detriment, and were violations of 19 U.S.C. § 1343 (wire fraud), and are Racketeering Acts and Activity.

61.    As part of this fraud, defendant **EZRA CHOWAIKI** caused the Picasso and the Leger, each worth more than $10,000.00, and which were fraudulently and illegally obtained, to be shipped from Spain to his Gallery in New York, thus violating 18 U.S.C. §§ 2314 and 2315 (relating to interstate transportation of stolen property) and each such shipment is a separate Racketeering Act and Activity.

62.    Neither defendant **EZRA CHOWAIKI** nor his Gallery, nor any other party ever acquired title, or other ownership to either the Picasso or the Leger, or the right to assign, mortgage, encumber, hypothecate, loan, pledge, lend, lien, or otherwise dispose of any right associated with either of these works of art in any way.

63.     Nor did defendant **EZRA CHOWAIKI** or his Gallery, or anyone else, ever

acquire the right to obtain and keep the proceeds of any disposition of those works of art for

himself, his Gallery, or anyone else.

64.     Neither defendant **EZRA CHOWAIKI**, nor his Gallery nor any other party ever

paid any consideration to plaintiff (or to any one acting on his behalf) for receipt of either the

Picasso or the Leger.

65.     Despite the representations made by defendant **EZRA CHOWAIKI**, plaintiff and

his brother repeatedly requested return of the Picasso and Leger, thus terminating the supposed

"consignment," but neither defendant **EZRA CHOWAIKI**, nor his Gallery, nor any of the other

defendants, nor anyone else ever returned either the Picasso or the Leger, despite further falsely

promising to do so.  Each such further false promise comprised additional violations of 19

U.S.C. § 1343 (wire fraud), and are Racketeering Acts and Activity.

66.     As a result of, *inter alia*, the demand for return of the Leger and Picasso, neither

defendant **EZRA CHOWAIKI,** nor his Gallery, nor anyone else had the right to sell, transfer, or

hypothecate them.

**D.**

**The Disposition of the Leger.**

67.     On information and belief, in or about January or February 2017, defendant

**EZRA CHOWAIKI,** through his Gallery, purportedly "sold" and shipped the Leger to

Glowside Investment Trading, 115 George Street, 4th Floor, Edinburgh, Scotland, United

Kingdom, and received money for that "sale" which was never shared with plaintiff or anyone

acting on his behalf.  Defendant **EZRA CHOWAIKI** never had authorization to make that sale

and keep all of the proceeds.

68.     On information and belief, Glowside Investment Trading does not exist, and no such entity is at the address given in Edinburgh, or elsewhere.

69.     On information and belief, the "sale" of the Leger was a non-existent and fraudulent sale designed to hide the acquirer of the Leger, such acquirer (as well as defendant **EZRA CHOWAIKI** and his Gallery) knowing that the Leger was stolen by defendant **EZRA CHOWAIKI**, and his Gallery.

70.     Upon information and belief, the disposition of the Leger as described above, including without limitation its "sale," transmission, transportation abroad, supposed "payment," and acquisition  are violations by defendant **EZRA CHOWAIKI**, and by the acquirer and unknown intermediaries, of  18 U.S.C. sections 1341 (relating to mail fraud), 1343 (relating to wire fraud), 1956 (relating to the laundering of monetary instruments, because each of the defendants knew that the proceeds were derived from Specified Unlawful – *i.e.*, RICO – Acts, and they each engaged or conspired to engage in financial transactions with the specific intent to promote those acts and/or to conceal or disguise those acts, and), 1957 (relating to engaging in monetary transactions in property or funds derived from Specified Unlawful Acts because the funds and/or property were worth more than $10,000.00, and they each knew that that the property was derived from Specified Unlawful – *i.e.*, RICO – Acts), and 2314 and 2315 (relating to interstate transportation of stolen property), and are each Racketeering Acts and Activity, and Specified Unlawful Acts.

**E.**

**Each of the Defendants Joins Together and Combine their Racketeering Acts and Activities in a Conspiracy, and Continue to Defraud Art Owners; Each Takes Further Actions with the Others to Implement and Continue Each Other's Prior Racketeering Acts and Activity.**

71.     As  detailed below, each and all of the defendants, by a variety of actions,  joined together to further the Racketeering Acts and Activity of the others and to defraud owners of their art -- and particularly of plaintiff's two works of art -- and to convert the works of art to defendants' benefit.  Each of the defendants did so fraudulently, knowingly, and with the intent that each profit from the various actions involved, and that plaintiff (and others) be harmed thereby.  Each of the defendants so profited; and plaintiff (and others) were thereby harmed, all as intended by each of the defendants.

72.     No later than at or about the late summer or early fall of 2017, defendants **DAVID BENRIMON** and  **DAVID BENRIMON FINE ART LLC,** acquired another work of art, *Le Compotier* by Juan Gris from defendant **EZRA CHOWAIKI** and his Gallery.  Upon information and belief, this acquisition was with the full knowledge and consent and participation of, and for the benefit of, all the defendants in this case.

73.     But, upon information and belief, *Le Compotier* by Juan Gris belonged to Eli Sakhai, another long-time mutual friend, neighbor, colleague, and frequent business associate and partner of defendants  **EZRA CHOWAIKI** and **DAVID BENRIMON** and the other defendants.

74.     Upon information and belief, on or about December 13, 2004, Eli  Sakhai was convicted in the United States District Court for the Southern District of New York of conspiracy to commit mail and wire fraud and mail fraud in connection with the sale of fraudulent art work.

75.     Eli Sakhai "specifically told [defendant **DAVID BENRIMON**] that he [Sakhai] owned" *Le Compotier* by Juan Gris, and that he [Sakhai] "had demanded that Chowaiki and Chowaiki & Co. return that painting to" Sakhai's corporation, The Art Collection Inc., and that defendants **DAVID BENRIMON** and **DAVID BENRIMON FINE ART LLC** should not pay either defendant **EZRA CHOWAIKI** or his Gallery for the painting because neither defendant **EZRA CHOWAIKI** nor his Gallery owned the painting or had the right to sell it to the Benrimons. *Art Collection Inc. v. David Benrimon, David Benrimon Fine Art, et al.,* Index No. 654079/2018 (New York Supreme Court, New York County) *Complaint,* ECF Doc. No. 1, ¶¶ 19, and more generally 12-19.

76.     Defendants **DAVID BENRIMON** and **DAVID BENRIMON FINE ART LLC** knew or should have known that *Le Compotier* by Juan Gris was fraudulently converted, and that defendant **EZRA CHOWAIKI** and his Gallery had no authority to transfer the work to defendants **DAVID BENRIMON** and **DAVID BENRIMON FINE ART LLC.** *Id.* at ¶ 18.

77.     The transfer and sale of *Le Compotier* by Juan Gris from defendant **EZRA CHOWAIKI** and his Gallery, to and with the knowledge and participation of, and for the benefit of, the other defendants, each knowing that it was converted, is a violation by each of the defendants of 18 U.S.C. §§ 1343 (relating to wire fraud), 1956 (relating to the laundering of monetary instruments, because they knew that the proceeds were derived from Specified Unlawful – *i.e.,* RICO – Acts (*i.e.* that defendant **EZRA CHOWAIKI** had no right or legal authority to convey *Le Compotier*), and they thereafter engaged in financial transactions with the specific intent to promote those acts and/or to conceal or disguise those acts), 1957 (relating to engaging in monetary transactions in property derived from Specified Unlawful Acts and activity because the funds and/or property were worth more than $10,000.00, and they knew that

that the property was derived from Specified Unlawful – *i.e.* RICO - Acts), and, if *Le Compotier* was transported outside the State of New York (as determined in discovery and trial) 2314 and 2315 (relating to interstate transportation of stolen property), each Racketeering Acts and Activity.

**F.**

**Transactions and Unlawful Acts Related to the Unlawful Disposition of the Picasso.**

78.     Upon information and belief, at or about the same time that *Le Compotier* was being sold/transferred between the defendants, and defendants were informed of the fraudulent nature of that acquisition, all no later than the late summer or early fall of 2017, defendant **EZRA CHOWAIKI** and his Gallery were in dire financial straits, and insolvent.  He therefore determined to illegally and fraudulently dispose of as many (or all) of the works of art he had fraudulently acquired, and had not already fraudulently sold or disposed – including plaintiff's Picasso (*le Gueridon*) – as was possible.  To do so, he worked together with and conspired with each of the defendants and with others to do so.

79.     Each of the defendants knew or should have known that the works of art were acquired fraudulently, and that their disposition or sale would be illegal and fraudulent.

80.     Defendant **EZRA CHOWAIKI** transferred at least four works of art to KS Gallery LLC, in a bulk sale or transaction, on or about September 8, 2017.  KS Gallery LLC is 100% owned by Dustin Adam Stein, who was by then the former long-time employee (as a "curator" and "gallerist" among other roles) of defendants other than **EZRA CHOWAIKI**. *See, e.g.,* https://www.326gallery.com/gallery-1).   KS Gallery LLC does business as 326 Gallery.

81.     Dustin Adam Stein is also a licensed attorney at law in New York State, Registration No. 4472726.  http://iapps.courts.state.ny.us/attorney/AttorneySearch#search_result.

82.     Dustin Adam Stein has appeared, as an attorney and counselor at law, for the Benrimon defendants in this court and otherwise.

83.     Each of those four works of art transferred in bulk to KS Gallery LLC, was supposedly separately invoiced by defendant **EZRA CHOWAIKI**'s Gallery to KS Gallery LLC as a sale, and each of the four "invoices" contained the following legend in bold and italicized letters:

> *The Purchaser further acknowledges and agrees that the artwork may not be sold until six months after the transfer of title date; and that all names and details disclosed in connection with this purchase shall remain completely confidential.* [All emphases in original.]

84.     The works so transferred or "sold" by defendant **EZRA CHOWAIKI** to KS Gallery LLC, were transferred pursuant to individual "Invoices" each dated September 8, 2017, and are:

1.     Pablo Picasso's *le Clown* [belonging to Andrew and Kirsten Neuman]. The work of art was personally taken by defendant **EZRA CHOWAIKI** to KS Gallery LLC on September 16, 2017.

2.     Takashi Murakami's *Jellyfish Eyes (Black I)*. The work of art was personally taken by defendant **EZRA CHOWAIKI** to KS Gallery LLC on September 16, 2017.

3.     Fernand Leger's *Trois soldats au repos dans un baraquemement (Dessin de front)*.

4.     Piet Mondrian's *Broekzijder Mill in the Evening* [belonging to Professor Bogomila Welsh-Ovcharov, of Toronto, Ontario].

85.     Upon information and belief, KS Gallery LLC issued four invoices, each also dated September 8, 2017, to defendant **EZRA CHOWAIKI**'s Gallery, one each for the sale of each of the four works of art above. The KS invoices to defendant **EZRA CHOWAIKI**'s Gallery were dated the same day, September 8, 2017, as the four invoices from **EZRA CHOWAIKI**'s Gallery invoices to KS for the same four works of art.

86.     The books and records of **EZRA CHOWAIKI**'s Gallery record payments made to it with respect to these four works of art, not as sales, but as loans from Dustin Adam Stein (not KS Gallery LLC), and with respect to at least one of the works of art, refer to the works of art physically transferred to KS Gallery LLC as "Collateral-with Dustin Stein."

87.     Moreover, the books and records of **EZRA CHOWAIKI**'s Gallery, record that the funds so transferred came from, at least in part, Mr. Stein's IOLA account (*i.e.,* not from KS Gallery LLC).

88.     Professor Bogomila Welsh-Ovcharov has accused Mr. Stein of working together with  defendant **EZRA CHOWAIKI**, to steal her work of art.  *Bogomila Welsh-Ovcharov v. Dustin Adam Stein, 326 Gallery, KS Enterprise LLC, and John Does I-X*, Index No. 657211/2017, Complaint, ECF Doc. 30 (New York Supreme Court, New York County).

89.     Professor Bogomila Welsh-Ovcharov states in her Complaint that there were many reasons for Stein to know that her work was stolen.  Among those reasons were that the work was "sold" to Stein at less than half its purported value, Complaint ¶ 38; that Stein resold the work to a third party at a 75% markup, *id.* ¶ 39; that Stein had actual prior knowledge of the work being stolen; that Stein failed to request ownership documents from **EZRA CHOWAIKI**'s Gallery;  and that Stein had knowledge of the many lawsuits against defendant **EZRA CHOWAIKI** and his Gallery for similar actions, *id.* ¶ 47.

90.     Added to this and the other facts asserted in the Complaint, are that the eight invoices dated September 8, 2017, for the four works of art, indicating that each was "sold" to KS and then simultaneously "sold" back to defendant **EZRA CHOWAIKI**'s gallery, or *vice versa* (something not known to Professor Bogomila Welsh-Ovcharov), possibly indicating 4 or 8 bogus "sales"; and the legend in bold and italics in each of the invoices to KS (but not on the

invoices from KS to defendant **EZRA CHOWAIKI**'s Gallery) in ¶ 83, above, giving defendant

**EZRA CHOWAIKI** six months to get out of town before his creditors and the Law catch up

with him, was all the notice needed to alert anyone that that the transactions were suspicious and

bogus.

91.     In his affidavit in *Bogomila Welsh-Ovcharov v. Dustin Adam Stein, 326 Gallery,*

*KS Enterprise LLC, supra,* Dustin Adam Stein states with respect to Professor Bogomila Welsh-

Ovcharov's work of art, that the work of art was purchased on behalf of a third party. Affidavit

of Dustin Adam Stein, *id.* at ECF Document 21, ¶¶ 6 *et seq.*   Upon information and belief, the

purchase of all four works of art (if they were purchased at all) delivered in bulk to Stein and KS

and 326 were also acquired on behalf of third parties.

92.     Professor Bogomila Welsh-Ovcharov's work of art has never been recovered, and

upon information and belief, has been sent abroad by Mr. Stein, on behalf of others.

93.     On September 25, 2017, nine days after receiving (and supposedly buying)

Picasso's *le Clown* and Murikami's *Jellyfish Eyes* – and despite KS Gallery LLC (not Stein as

attorney) having bought those works for a principal (using funds in Stein's IOLA account) – KS

Gallery LLC supposedly "sold" (at least for the second time, September 8, 2017, being the first

time we know about) and returned those works of art to **EZRA CHOWAIKI** and his Gallery.

Stein never gave any reason for returning the works of art after nine days, after KS supposedly

bought them on behalf of an un-named third party, with money from Stein's IOLA account.

94.     Upon information and belief, at or about the same time that *Le Compotier* was

being sold by defendant **EZRA CHOWAIKI**'s Gallery to defendant **DAVID BENRIMON**

**FINE ART LLC** (the late summer or early fall of 2017); and at or about the same time that

defendant **DAVID BENRIMON** was given notice by the true owner of the work that defendant

**EZRA CHOWAIKI** had no right to sell it; and at the same time that the four works of art were transferred to KS Gallery LLC and "paid" for by using funds coming from the IOLA account of Dustin Adam Stein; defendant **EZRA CHOWAIKI** was attempting to sell, in another bulk sale or transaction, all or some of these four works of art already "sold" and transferred to KS Gallery LLC, and up to at least seven additional works of art (which included plaintiff's Picasso, *le Gueridon*), to defendants **DAVID BENRIMON** and **DAVID BENRIMON FINE ART LLC**.

95.     To that end, defendants **DAVID BENRIMON** and **LINDA BENRIMON also known as LINDA ROSEN** were negotiating (on behalf of defendant **DAVID BENRIMON FINE ART LLC**) with defendant **EZRA CHOWAIKI** and his Gallery for the purchase and acquisition of these works of art, each at deeply discounted prices.

96.     But, upon information and belief, defendants **DAVID BENRIMON, LINDA BENRIMON also known as LINDA ROSEN, DAVID BENRIMON FINE ART LLC**, and the other **BENRIMON** defendants, desired to conceal their ownership and acquisition of the art, acquired in bulk at a deep discount, at a time that they knew that defendant **EZRA CHOWAIKI** was selling works of art he had no right to sell, and at a time he and his Gallery were facing bankruptcy, insolvency, a series of lawsuits, and possibly criminal liability.

97.     Therefore, instead of having defendant **DAVID BENRIMON FINE ART LLC** purchase the works of art, each of the defendants in this case structured the transaction so that another, supposedly unrelated, entity – defendant **PIEDMONT CAPITAL LLC** – would "lend" defendant **EZRA CHOWAIKI** and his Gallery money which was never going to be repaid, using the works of art as "collateral" for the "loan," and then acquiring ownership of the works of art when the "loan" would not be repaid.

98.     Thus, at the conclusion of these negotiations, on September 19, 2017, on behalf of and for defendant **DAVID BENRIMON FINE ART LLC**, defendants **DAVID BENRIMON** and **LINDA BENRIMON also known as LINDA ROSEN** and the other defendants, agreed to acquire three additional works of art, in a bulk sales transaction, from defendant **EZRA CHOWAIKI**'s Gallery.  These works of art were plaintiff's Picasso (*le Gueridon*) and two other works of art, Takashi Murakami's *Jellyfish Eyes (Black I)* and Pablo Picasso's *le Clown* (which belonged to Andrew and Kirsten Neuman).

99.     In the afternoon of September 19, 2017, defendants **DAVID BENRIMON** and **LINDA BENRIMON also known as LINDA ROSEN**, on behalf of defendant **DAVID BENRIMON FINE ART LLC** sent at least three emails to defendant **EZRA CHOWAIKI** and his Gallery (all sent from and responded to defendant **DAVID BENRIMON**'s email), at 12:12 PM, 3:12 PM, and 3:44 PM), concluding the "negotiations":

1.     Hi Ezra,

       I'm attaching draft loan documents. They are much simpler than they seem, very short.
       Reviewing the works you just sent and will revert back shortly.

       All the best,

       Linda

                                        *

2.     Hi Ezra,

       Here are executable copies. Let's do it! No need to ship us the work for now. Do we wire
       to your regular Chowaiki & Co account?

       All the best,

       Linda

\*

3.    Hi Ezra,

Okay, we decided to just do the Murakami and two Picassos so we don't over complicate.

See attached. I hope this is good to go.

All the best,

Linda

100.    It took defendant **EZRA CHOWAIKI** less than four minutes to execute and
return the "much simpler than they seem, very short" documents to defendants **DAVID
BENRIMON** and **LINDA BENRIMON also known as LINDA ROSEN,** who were each
acting on behalf of defendant **DAVID BENRIMON FINE ART LLC**.

101.    Upon information and belief, all the transaction documents were created by, and
at the premises of, and by the staff of, defendant **DAVID BENRIMON FINE ART LLC.**

102.    The documents comprising this transaction are attached as *Exhibit 2* to this
Complaint.  Those documents consist of:

1.   A "NOTE" dated "As of September 19, 2017" for a loan of $300,000.00 from
     defendant **PIEDMONT CAPITAL LLC** to defendant **EZRA CHOWAIKI**'s
     Gallery, to be repaid in 30 days, together with $50,000.00 interest, for a total
     uncompounded interest rate of 202.818%.

2.   A "PLEDGE AGREEMENT made as of this 19th day of September, 2017,"  in which
     the pledgor/borrower (defendant **EZRA CHOWAIKI**'s Gallery) gives defendant
     **PIEDONT CAPITAL LLC** the following artworks as security for repayment of the
     loan:

     (i)    Takashi Murakami, *Jellyfish Eyes (Black I)*, 2004, acrylic on canvas and panel
            support, ~ 48 x 48 inches;

(ii)    Pablo Picasso, *Le Gueridon*, 1920, charcoal on paper, ~ 11 x 8 inches;

(iii)    Pablo Picasso, *Le Clown*, 1968, marker and crayon on paper, ~ 14 x 13 inches (collectively, the "Artworks").

3. A "SHTAR ISKO" dated as of September 19, 2017, in which the $300,000.00 loan is to be used for a joint venture between defendants **PIEDONT CAPITAL LLC** and **EZRA CHOWAIKI** (and/or his Gallery) for a partnership to buy and sell artworks in which profits will be shared equally between them.

4. A "RELEASE AND SETTLEMENT AGREEMENT" dated October 19, 2017, in which the parties agree that in view of the Borrower's (defendant **EZRA CHOWAIKI**'s Gallery) failure to repay the $300,000.00 loan plus $50,000.00 in interest when due on October 19, 2017, the Borrower transfers all title and ownership in the three artworks to defendant **PIEDONT CAPITAL LLC.**

103.    The details of this ("much simpler than they seem, very short") transaction, as concocted by defendants, are as follows: by a "NOTE" dated "As of September 19, 2017," defendant **PIEDMONT CAPITAL LLC,** through its managing partner, defendant **AVICHAI ROSEN**, supposedly lent $300,000.00 for a period of 30 days to "Chowaiki & Co a New York limited liability company," a company that has never existed. At the end of the 30 days, the "Debtor" was to return $350,000.00 ($300,000.00 plus $50,000.00 interest). Thus, the annual uncompounded percentage rate of interest on that loan is 202.818% (based on a 365 day year).

104.    The 202.818% interest loan was criminally usurious under New York law because it was at more than 8 times greater than New York's 25% interest rate for criminal usury. McKinney's New York Penal Law § 190.40.

105.    This $300,000.00 loan, for 30 days at $50,000.00 interest, was therefore also an "unlawful debt" as defined in 18 U.S.C. § 1961 (6) because it was unenforceable under New York's usury laws and was incurred in connection with the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate (here it was more than eight times that rate).  The Verified Petition of defendant **PIEDMONT CAPITAL LLC**, verified by defendant **AVICHAI ROSEN** under penalties of perjury, states that both were in the business of lending money: "A significant portion of Piedmont's business consists of making loans secured by works of art.  Through this business, Piedmont provides necessary liquidity to art dealers, collectors, and other participants in the art market." *United States of America v. Chowaiki, supra*, Document 57 at *p.* 1, ¶ 2.

106.    The "Shtar Isko" provides, that:

the provider [defendant **PIEDMONT CAPITAL LLC**] and receiver [defendant **EZRA CHOWAIKI** and/or his Gallery] of these [$300,000.00] funds are considered equal partners....All consequent profits or losses are then equally shared.

107.    This "Shtar Isko was  submitted by defendants **PIEDMONT CAPITAL LLC** and **AVICHAI ROSEN**, as part of their claim in the Bankruptcy Case.  See Claim 63-1, Part 2, p. 27 of defendant **PIEDMONT CAPITAL** LLC's Proof of Claim filed in the *In Re Chowaiki & Co. Fine Art Ltd.* Bankruptcy case in this district, 17-13228 (MKV), but it was not filed as part of defendants **PIEDMONT CAPITAL LLC** and **AVICHAI ROSEN**'s Verified Petition in the Criminal action in this district, *United States of America v. Chowaiki, supra*, Document 57.

108.    In this Shtar Isko, defendant **EZRA CHOWAIKI** wrote, "I, the undersigned," "obligate myself to buy what I feel is best for doing business at the present time with this money I have accepted, and all profits shall be shared equally between myself and Piedmont Capital LLC."

109.    Thus the fraudulent $300,000.00 loan at 202.818% interest was not only an unlawful debt, it was also an extortionate credit transaction by defendant **PIEDMONT CAPITAL LLC** to acquire half of defendant **EZRA CHOWAIKI's** business and/or the three works of art subject to the Pledge Agreement, in violation of 18 U.S.C. §§ 891-894, and is a Racketeering Act and Activity, and a Specified Unlawful Act.

110.    Furthermore, upon information and belief, the $300,000.00 "lent" to defendant **EZRA CHOWAIKI** or to his Gallery for these three works of art did not originate from defendant **PIEDMONT CAPITAL LLC** (even if defendant **PIEDMONT CAPITAL LLC** may have been the immediate transmitter of the funds to the Gallery), but from defendants **DAVID BENRIMON** or **DAVID BENRIMON FINE ART LLC**, or one of the other defendants in this case, or some other party, and these concocted documents in *Exhibit 2*, were intended to conceal that fact.

111.    And upon information and belief, those $300,000.00 were the proceeds of some other form of Specified Unlawful Acts or activity, and were used in this transaction in violation of 18 U.S.C. §§ 1956 (relating to the laundering of monetary instruments) by each of the defendants because each knew that the proceeds were derived from Specified Unlawful Acts, and they engaged in financial transactions with the specific intent to promote those acts and/or to conceal or disguise those acts, and), 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity) because the funds and/or property were worth more than $10,000.00, and they knew that that the property was derived from Specified Unlawful Acts, each Racketeering Acts and Activity, and they immediately spent it.

112.    The Pledge Agreement, in the  third Whereas clause, states that Pledgor
(Chowaiki & Co.) is the record and beneficial owner of three works of art, including Murakami's
*Jellyfish Eyes (Black I)*, and Picasso's *le Clown* and *le Gueridon*.

113.    Each of the defendants knew or should have known that this was false, and each
of the defendants intended that this falsehood deceive others, including plaintiff and this court, to
their detriment.

114.    In a verified petition filed in the criminal case, defendants **AVICHAI ROSEN**
and **PIEDMONT CAPITAL LLC** told this court under penalties of perjury that in acquiring
these three works of art, they "considered the Artworks' size, composition, artistic merit,
***provenance,*** and market information regarding comparable works of art." *United States v.
Chowaiki, supra*, Doc 57, ¶ 17 (emphasis added).

115.    In fact, on September 19, 2017, each of the defendants had in their hands *Exhibit
3* to this Complaint, which is styled by defendants **PIEDMONT CAPITAL LLC** and
**AVICHAI ROSEN**, in their proof of claim in the Bankruptcy Action as "Exhibit G. Collateral
Description—Pablo Picasso, Le Gueridon (1920)" setting out the provenance of Picasso's *le
Gueridon* as follows:

> ***Provenance***
> Heinz Berggruen, Paris
> Private Collection, Berlin
> Sale: Sotheby's, London, 22 October 1997, lot 15
> Private Collection (acquired at the above sale)
>
> Sale Sotheby's, London, 6 February 2007, lot 152
> Private Collection (acquired at the above sale)

*In Re: Chowaiki & Co. Fine Art Ltd., supra,* Claim 63-1, Part 2, p. 1, and p. 22, and at *Exhibit 3*
to this Complaint.

116.    Plaintiff bought *le Gueridon* at the February 6, 2007 Sotheby sale in London as

Lot 0152 (see *Exhibit 1* of this Complaint), and any good faith purchaser acquiring *le Gueridon*

from defendant **EZRA CHOWAIKI** or his Gallery – especially knowing that its current owner

acquired it at Sotheby's in London on February 6, 2007 – could and should have demanded proof

of how defendant **EZRA CHOWAIKI** and/or his Gallery came into possession of that work of

art and could sell or hypothecate it.  Either none of the defendants demanded such proof (because

they did not want to know the truth), or they did not need to because they knew that the work of

art was stolen.

117.    In the "Release and Settlement Agreement" dated October 19, 2017, "Chowaiki &

Co." gave defendant **PIEDMONT CAPITAL LLC** 100% of its right title and interest to the

three works of art because Chowaiki & Co. did not re-pay the $350,000.00 of the loan-sharked

loan within the thirty days.  Thus, defendant **PIEDMONT CAPITAL LLC** supposedly became

the "owner" of plaintiff's Picasso, *le Gueridon* and the two other "pledged" works of art.

118.    Upon information and belief, all of these documents (the Note, the Shtar Isko, the

Pledge Agreement, and the Release and Settlement Agreement) are fabrications and false; are

fraudulent; are designed to conceal that all of the defendants were operating together, and that

each of them knew that the works of art subject to these documents could not be lawfully

assigned, sold, or hypothecated; are designed to conceal that defendants **DAVID BENRIMON**

and/or **DAVID BENRIMON FINE ART LLC** were the true purchasers of the works of art, at a

deep discount, knowing them to be stolen or acquired and sold fraudulently; are designed to

conceal the fact that this was an acquisition of stolen or fraudulently acquired merchandise, not a

bona fide loan secured by three works of art, which was not paid; the transaction does not

involve a loan for $300,000.00 at 202.818% interest which wasn't paid, but a loan of

$300,000.00 at 202.818% interest which was not intended by anyone to be paid, because the $3000,000.00 was a purchase of property known by all defendants to be stolen or acquired fraudulently; and to further hide, conceal and disguise the fact that each of the defendants by these documents, intended to illegally profit by the unlawful payment of the $300,000.00, by fraudulently obtaining the works of art, transporting them abroad, and profiting by their disposition or sale, thus depriving the true owners, including plaintiff, of their property.

119.    On September 19, 2017, each of the defendants knew, or should have known that:

(a)    Defendant **EZRA CHOWAIKI** and his Gallery had a court-documented history of selling and pledging works of art that neither he nor his Gallery owned or had a right to sell or pledge.

(b)    Defendant **EZRA CHOWAIKI** was in desperate financial straits, and had no assets and was likely insolvent, and may be arrested.

(c)    Defendant **EZRA CHOWAIKI** was selling (and his business was to sell) the same piece of art to more than one purchaser.

(d)    Defendant **EZRA CHOWAIKI** was selling or pledging works of art he did not own and had no right to sell or pledge.

(e)    Defendant **EZRA CHOWAIKI** needed the $300,000.00 to pay off another loan, and by depleting his inventory by hypothecating or selling three works of art at steeply discounted prices, it would be impossible to pay back the loan at 202.818% interest within 30 days.

(f)    Defendant **EZRA CHOWAIKI** would not and could not fulfill the terms of the Shtar Isko to buy and sell works of art with defendants **PIEDMONT CAPITAL**

37

LLC and **AVICHAI ROSEN**, as partners because all defendants knew that the $300,000.00 was needed immediately to pay off another loan.

(g) There was a real likelihood that defendant **EZRA CHOWAIKI** would be arrested for his fraudulent activity.

(h) Defendant **EZRA CHOWAIKI** was selling works of art in bulk, at steeply discounted prices, thus giving a clear warning that those works were stolen, and that defendant **EZRA CHOWAIKI** and his Gallery would be incapable of paying $350,000.00 within thirty days.

(i) The price for the three works of art was less than one third of their true value. *See* ¶¶ 121 and 135, below.

(j) Picasso's *le Gueridon* was owned by a purchaser who bought it at a sale in Sotheby's in London (*i.e.,* plaintiff) on February 6, 2007 and that defendant **EZRA CHOWAIKI** and his Gallery had no right to sell it.

(k) Two of the works of art supposedly used as collateral for the $300,000.00 "loan," Picasso's *le Clown* and Murakami's *Jellyfish Eyes (Black I)*, were not at defendant **EZRA CHOWAIKI**'s Gallery on September 19, 2017, but were at KS Gallery LLC (owned by the defendants Benrimons' former long-time employee and attorney). According to the records of defendant **EZRA CHOWAIKI**'s Gallery, the third work of art, plaintiff's Picasso, *le Gueridon*, was at "Soph's House" and had been there since March 17, 2017. Therefore neither defendant **PIEDMONT CAPITAL LLC** nor defendant **AVICHAI ROSEN**, nor anyone else could have believed that a $300,000.00 loan was being secured by works of art that didn't even exist, or that could not be found, or were not in the possession

of the supposed borrower/owner, defendant **EZRA CHOWAIKI**'s Gallery.  In fact, upon information and belief, no one ever bothered to check to see if the "collateral" actually existed or could be found or belonged to defendant **EZRA CHOWAIKI** or his Gallery.

(l)     Defendant **EZRA CHOWAIKI** and his Gallery were incapable of paying $350,000.00 within 30 days, and no one ever expected that he do so, or intended or wanted him to do so.

(m)    The short period of the loan – 30 days – and the huge loan-sharked interest rate, were specifically designed and intended by all of the defendants to permit and guarantee defendants **DAVID BENRIMON** and/or **DAVID BENRIMON FINE ART LLC** be able to take possession of the "collateralized" works of art upon non-payment of the "loan" in the shortest period of time possible.

(n)     Defendants **DAVID BENRIMON** and/or **DAVID BENRIMON FINE ART LLC** – not defendants **PIEDMONT CAPITAL LLC** and **AVICHAI ROSEN** – were the true purchasers of the three works of art.

120.    Moreover, as the three emails in the afternoon of September 19, 2017, from defendants **DAVID BENRIMON** and **LINDA BENRIMON also known as LINDA ROSEN**, to defendant **EZRA CHOWAIKI** indicate, defendants knew the purpose of the loan was acquiring the three works of art, not lending money ("Okay, we decided to just do the Murakami and two Picassos so we don't over complicate"), and were not interested in the art works as collateral, but in acquiring them for further disposition ("No need to ship us the work for now") and knew that defendant **EZRA CHOWAIKI** was not engaging in a legitimate business

transaction on behalf of his Gallery, and therefore would prefer that the payment be made to an account other than the Gallery  ("Do we wire to your regular Chowaiki & Co account?").

121.    Finally, the amount paid for the three works of art, $300,000.00, was less than a third of the value defendants themselves put on these works of art.  In a filing made under penalties of perjury in the Bankruptcy case, *In Re Chowaiki & Co. Fine Art Ltd.,* 17-13228-mkv, on April 16, 2018, defendants **PIEDMONT CAPITAL LLC** and **AVICHAI ROSEN** say Picasso's *Le Clown* and Takashi Murakami's *Jellyfish Eyes (Black I)* are worth $500,000.00.  *Id.* at Claim 63-1, *p.* 2.  Defendant **PIEDMONT CAPITAL LLC** made no claim to plaintiff's Picasso (*le Gueridon*) either in the Bankruptcy Court or in the forfeiture action in defendant **EZRA CHOAWAIKI's** Criminal Case.  But upon information and belief, all or some of defendants (with the knowledge and participation, and to the benefit, of all of them) were involved in 2018, in attempting to sell the Picasso in Europe for 380,000.00 euros or approximately $441,000.00.  *See* ¶ 135, below.  Thus, the value of the three works of art subject to the loan, by defendants' own reckoning, is at least $941,000.00.  In addition, the true value is even higher than $941,000.00 because plaintiff's Picasso (*le Gueridon*) was stolen, and is (or was) being sold with a different provenance, and is subject to competing claims of title thus making its clear title value much higher than the $441,000.00 being sought by defendants or their agents, or assignees.

122.    Accordingly, the transaction involving the three works of art was fraudulent, as were the documents dated September 19, 2017 and October 19, 2017, in order to disguise the true nature of the transaction, and the true buyers of the stolen or fraudulently acquired works of art.  All the defendants intended that others, specifically the owners of the works of art, including plaintiff, rely on the false and fraudulent nature of the transaction and documents to their

detriment, and plaintiff was so harmed. The many emails and telephone conversations among the defendants to execute this transaction and negotiate and execute the documents constitute correspondingly many violation by each of the defendants of 18 U.S.C. § 1343 (relating to wire fraud), which are Racketeering Acts and Activity as well as Specified Unlawful Acts.

123.    Each of the defendants knew that the $300,000.00 payment to fraudulently acquire the three works of art, was going to be used by defendant **EZRA CHOWAIKI** or his Gallery to pay a third-party, Borro Private Finance (or one of its subsidiaries or affiliates), for a loan made to defendant **EZRA CHOWAIKI** or his Gallery. In fact, with the knowledge and participation of all defendants, on September 19, 2017, using the banking system, defendant **EZRA CHOWAIKI** or his Gallery took the $300,000.00 payment from the other defendants, and sent the proceeds of the illegal activity to pay Borro or its affiliates. This was a violation by all defendants of 18 U.S.C. §§ 1956 (relating to the laundering of monetary instruments, because they knew that the proceeds were derived from Specified Unlawful – *i.e.*, RICO – Acts,  and they engaged (and conspired to engage) in financial transactions with the specific intent to promote those acts and/or to conceal or disguise those acts, and), 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity because the funds and/or property were worth more than $10,000.00, and they knew that that the property and funds were derived from Specified Unlawful – *i.e.* RICO - Acts), and § 1343 (wire fraud), each Racketeering Acts and Activity.

124.    On October 4, 2017, defendant **EZRA CHOWAIKI** caused plaintiff's Picasso, *le Gueridon*, to be picked up from "Soph's House" and delivered to his Gallery. The records of the Gallery then indicate that on the same day, "10/4/17: DBR[David Benrimon]/Linda Benrimon had their staff collect this from the gallery. per ezra."

125.    While the Benrimon defendants took possession of plaintiff's Picasso, *le Gueridon*, upon information and belief, the other two artworks, Picasso's *le Clown* and Murakami's *Jellyfish Eyes (Black I)*, were never delivered to any of the non-**JOHN DOE** defendants in this case, and no non-**JOHN DOE** defendant ever took possession of them.

126.    Consequently, each of the defendants knew (as if they did not already know) that the transaction involving the $300,000.00 "loan" secured by the three works of art was an utter and complete fraudulent, corrupt, and illegal transaction.

### G.

**Further Disposition of Plaintiff's *le Gueridon* and its Unlawful Transportation to Europe.**

127.    Neither Defendant **DAVID BENRIMON**, nor defendant **DAVID BENRIMON FINE ART LLC**, nor any of the other **BENRIMON** defendants, nor defendant **PIEDMONT CAPITAL LLC,** nor any other defendant nor anyone else ever acquired title or legal possession of *Le Gueridon* even under the chain of fabricated documents in *Exhibit 2*.

128.    Yet, upon information and belief, each of the defendants, and each knowing that none of them had any right or title, or right to dispose of *le Gueridon*; and each of them knowing that *le Gueridon* belonged to plaintiff; attempted to sell *le Gueridon* by Pablo Picasso, and upon information and belief, either sold *le Gueridon* or conspired with others to sell it, and transported it to Europe for sale.  Each of the defendants thereby furthered or advanced, or secured the conversion of plaintiff's property, defrauded plaintiff and any supposed bona fide "purchaser" and transported stolen or fraudulently acquired property over state lines.  These were each violations by each of the defendants of 18 U.S.C. §§ 2314 and 2315 (relating to interstate transportation of stolen property), each and all the foregoing constituting Racketeering Acts and Activity.

129.    Upon information and belief, defendants caused plaintiff's Picasso's *le Gueridon* to be transported at least two additional times.  Once from Switzerland to London in the summer or fall of 2018, a second time from London to Switzerland a few weeks thereafter.  These were each violations by each of the defendants of 18 U.S.C. §§ 2314 and 2315 (relating to interstate transportation of stolen property), each and all the foregoing constituting Racketeering Acts and Activity.

130.    The current location of plaintiff's Picasso *le Gueridon*, is unknown to plaintiff.

131.    However, upon information and belief, defendants other than **defendant EZRA CHOWAIKI**, caused plaintiff's Picasso *le Gueridon* to be displayed at Tega Galleries in Milan, an entity, upon information and belief, with whom defendants **DAVID BENRIMON FINE ART LLC, DAVID BENRIMON, LINDA BENRIMON also known as LINDA ROSEN**, and **EZRA CHOWAIKI** have done business with in the past.

132.    According to Tega's display sheet, attached as *Exhibit 4* to this Complaint, Tega exhibited plaintiff's Picasso *le Gueridon* in Milan in 2018.

133.    Also according to the display sheet, the provenance of the *le Gueridon* was changed from the true provenance, as set out in the attached *Exhibit 3*, which is taken from Exhibit G of defendant **PIEDMONT CAPITAL LLC**'s Proof of Claim (filed under penalties of perjury) in the Bankruptcy case, Claim 63-1, Part 2, p. 1, and p. 22 (Exhibit G), and which states:

> **Provenance**
> Heinz Berggruen, Paris
> Private Collection, Berlin
> Sale: Sotheby's, London, 22 October 1997, lot 15
> Private Collection (acquired at the above sale)
> Sale Sotheby's, London, 6 February 2007, lot 152
> Private Collection (acquired at the above sale)

to:
> PROVENANCE:
> Private collection
> Berggruen, Paris

*see Exhibit 4*, thus intentionally and fraudulently deleting and altering a century of chain-of-ownership records and especially erasing the last two entries for the provenance, those showing that a private collector, who bought the work of art at Sotheby's in London on February 6, 2007, as lot 152 (*i.e.,* plaintiff **ALEJANDRO MALVAR EGERIQUE**) was the last person to own the work of art. *Compare Exhibits 1* (proof of purchase by plaintiff of plaintiff's Picasso, *le Gueridon*) and *3* (Defendants **AVICHAI ROSEN** and **PIEMONT CAPITAL LLC**'s Exhibit G, showing the provenance as including the 2007 Sotheby sale to a private collector (*i.e.,* plaintiff) to *Exhibit 4.* (Heinz Berggruen was a well-known Picasso collector and gallery owner in Paris. He fled Paris before World War II and emigrated to the United States where he became a U.S. citizen, earned a degree at the University of California at Berkley, and served with the U.S. Army in World War II, *see, e.g.,* https://www.metmuseum.org/art/libraries-and-research-centers/leonard-lauder-research-center/programs-and-resources/index-of-cubist-art-collectors/berggruen and https://www.nytimes.com/2007/02/27/arts/design/27berggruen.html.)

134.    Upon information and belief, in order to conceal the true owners of plaintiff's Picasso, *le Gueridon*, each of the defendants fraudulently caused the provenance of plaintiff's Picasso, *le Gueridon* to be changed so that (1) the stolen (or fraudulently acquired) painting could more easily be sold, and (2) to more easily and successfully complete the theft or fraud, and (3) to defraud potential purchasers, law-enforcement officials, and creditors of defendant **EZRA CHOWAIKI** and his Gallery.  This was done by numerous telephone calls and emails, and mail, and each such call, email, mailing, etc., was a violation by each of the defendants of 18 U.S.C. sections 1341 (relating to mail fraud) and 1343 (relating to wire fraud), each Racketeering Acts and Activity.

135.     Upon information and belief, Tega offered plaintiff's Picasso, *le Gueridon* for sale for 380,000.00 euros or approximately $441,000.00.

## H.

### Fraudulent Court Filings.

136.     Defendants **PIEDMONT CAPITAL LLC** and **AVICHAI ROSEN** have made numerous electronic filings (which were subsequently or simultaneously mailed to third parties) in both the Gallery's Bankruptcy Case, and in defendant **EZRA CHOWAIKI's** Criminal Case, in which defendants **PIEDMONT CAPITAL LLC** and **AVICHAI ROSEN** assert ownership of the two other works of art they supposedly acquired as a result of the documents supposedly executed on September 19 and October 19, 2017, in which the role or name of the true acquirers/purchasers, defendants **DAVID BENRIMON** and **DAVID BENRIMON FINE ART LLC**, are never mentioned at all.

137.     These filings were each fraudulent, and each was designed to deceive plaintiff, other owners of works of art, the creditors of **EZRA CHOWAIKI**'s Gallery, the victims of defendant **EZRA CHOWAIKI**'s crimes, the Trustee in the Bankruptcy case, the courts, and law enforcement officials into believing that defendants **DAVID BENRIMON, DAVID BENRIMON FINE ART LLC, LINDA BENRIMON also known as LINDA ROSEN**, and the other **BENRIMON** defendants had nothing to do with these fraudulent transactions, or indeed that the transactions were fraudulent at all; whereas each of them (as well as defendant **EZRA CHOWAIKI** and the other defendants) knew the transactions were fraudulent and each knew about, participated in, approved, and benefitted from both the transactions themselves as well as from the fraudulent filings.

138.    These fraudulent filings were made by wire and mail in the Bankruptcy Case in

filing claims 62 and 63, each separately filed April 16. 2018; and in the Criminal Case on July

10, 2018 (Docket 57, Petition), and January 17, 2019 (Docket 98, memorandum in opposition to

Government's motion to dismiss), February 7, 2019 (Docket 114, oral argument), and April 2,

2019 (Docket 119, transmission of opinion, which was procured by fraud).   Each such violation

was a violation of 18 U.S.C. § 1341 (relating to mail fraud), and 1343 (relating to wire fraud),

and an offense and violation involving fraud connected with a case under United States Code,

title 11 (the Bankruptcy Code); each such violation constituting Racketeering Acts and Activity.

## I.

### Further Uses of Proceeds of Unlawful Activity.

139.    Defendants and each of them used the proceeds of the foregoing unlawful

activities and other unlawful activities as will be determined at discovery and trial, to purchase

on April 11, 2018, (utilizing the banking system and personal and other bank accounts) a second

apartment in this district (New York, New York) for defendants **AVICHAI ROSEN** and

**LINDA BENRIMON also known as LINDA ROSEN**.  The purchase price for the second

apartment was $3,750,000.00, of which $2,350,000.00 was a mortgage.

140.    This purchase was a violation of 18 U.S.C. § 1956 (relating to the laundering of

monetary instruments, because each of the defendants knew that the proceeds were derived from

Specified Unlawful – *i.e.,* RICO – Acts,  and they each engaged or conspired to engage in

financial transactions with the specific intent to promote those acts and/or to conceal or disguise

those acts, and), U.S.C. § 1957 (relating to engaging in monetary transactions in property or

funds derived from specified unlawful activity because the funds and/or property were worth

more than $10,000.00, and they each knew that that the property was derived from Specified

Unlawful – i.e. RICO – Acts), each Racketeering Acts and Activity

### J.

### Continuing Conspiracy and Racketeering Acts and Activity of Defendants.

141.    Neither Chowaiki & Co. Fine Art Ltd., nor any of the defendants, nor anyone

else, has ever paid plaintiff (or anyone else acting on his behalf) any money or other

consideration for plaintiff's two works of art which are missing and have never been returned to

plaintiff.

142.    Each of the defendants, acting together and alone, and as part of the ongoing

conspiracy to defraud and unlawfully convert art, and unlawfully transport it over state lines and

internationally, and to conceal and hide the source of the funds for such purposes or derived from

such acts, and to transport such funds, and to conceal and hide all the forgoing, and knowing that

they were obtaining money and property by false pretenses, and were selling plaintiff's art (and

other people's art as well) by false pretenses, and were receiving and transporting stolen or

fraudulently-acquired art over state lines, and were submitting intentionally misleading

documents to the Bankruptcy Court and to this Court in the case of *United States of America v.*

*Chowaiki, supra*, knew they were acting illegally and fraudulently in doing so, and are

continuing to do so.

143.    By virtue of the acts and omissions set out above, defendants and each of them, in

a pattern of racketeering activity against numerous victims at least since 2005 and continuing to

date, repeatedly engaged in activity which violates (a) 18 U.S.C. §§ 891-894 (extortionate credit

transactions), (b) 18 U.S.C.   §§ 1341 and 1343 (mail and wire fraud); (c) 18 U.S.C. §§ 2314-

2315, (transporting stolen property over state lines) (d) 18 U.S.C. § 1956 (relating to the

laundering of monetary instruments), (e) 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from unlawful activity) and (e) committed fraud in connection with a bankruptcy case under United States Code Title 11 (by knowingly and intentionally filing false and fraudulent proofs of claims in In Re *Chowaiki & Co Fine Art Ltd.* and a materially false and fraudulent petition in the forfeiture proceeding in *United States of America v. Chowaiki, supra*), all of which are RICO predicate acts of Racketeering Acts and Activity pursuant to18 U.S.C. § 1961 (1), and are also "Specified Unlawful Acts" for the purposes of 18 U.S.C. §§ 1956 and 1957.

144.    All of the foregoing constitutes a pattern of Racketeering activity engaged in by each of the defendants, and is continuing.

145.    Each of the defendants, acting together and alone, was employed by or associated with each of the RICO Enterprises identified in ¶¶ 17 and 18-25, above, and each of the defendants conducted and conducts or participated or participates, directly or indirectly, in the conduct of each such Enterprise's affairs through the foregoing pattern of Racketeering activity and the collection of unlawful debt, with respect to each such RICO Enterprise, as follows:

### (1) With Respect to Defendant DAVID BENRIMON FINE ART LLC (as a RICO Enterprise):

(i)     Each of the defendants (other than defendant **DAVID BENRIMON FINE ART LLC**) was either employed by or associated with this RICO Enterprise.

(ii)    Each of the defendants (other than defendant **DAVID BENRIMON FINE ART LLC**) conducted and conducts or participated or participates, directly or indirectly, in the conduct of such Enterprise's affairs, *inter alia,* as follows:

- Defendants **DAVID BENRIMON** and **LINDA BENRIMON also known as LINDA ROSEN**, by making all executive, operational, and managerial decisions related to this RICO Enterprise, and in executing and formulating all its decisions.

- Defendants **AVICHAI ROSEN** and **PIEDMONT CAPITAL LLC** by providing the financing (or pretending to do so) to procure fraudulently acquired or stolen art; to file court documents seeking possession of fraudulently acquired or stolen art, while concealing the role of this RICO Enterprise; and to otherwise appear as the front-men and entities to successfully hide and disguise the fraudulent and corrupt operations of this RICO Enterprise.

- Defendant **EZRA CHOWAKI** by providing the stolen and fraudulently acquired art to this RICO Enterprise to sell and monetize.

- Defendants **LAUREN BENRIMON** and **ALEX BENRIMON**, as, respectively, this RICO Enterprise's "Fine Art Advisor" and "Director of Sales" by providing advice, counsel, and experience in buying and selling works of art and in executing those purchases and sales.

## (2) With Respect to The BENRIMON-CHOWAIKI ENTERPRISE (as a RICO Enterprise):

(i)      Each of the defendants was either employed by or associated with this RICO Enterprise.

49

(ii)    Each of the defendants conducted and conducts or participated or participates, directly or indirectly, in the conduct of such Enterprise's affairs, *inter alia,* as follows:

- Defendant **EZRA CHOWAIKI** by making executive, managerial, operational, executive decisions of this RICO Enterprise.

- Defendants **DAVID BENRIMON FINE ARTS LLC**, **DAVID BENRIMON** and **LINDA BENRIMON also known as LINDA ROSEN**, by making executive, operational, and managerial decisions related to the disposition of this RICO Enterprise's fraudulently acquired and stolen works of art; in illegally transporting them overseas; in executing and concealing such disposition; in arranging, coordinating, and concealing such disposition, and the source of funds for such acquisitions and dispositions; in knowingly and intentionally laundering the proceeds of prohibited activity; in conceiving, coordinating, and supervising this RICO Enterprise, and in executing and formulating its decisions.

- Defendants **AVICHAI ROSEN** and **PIEDMONT CAPITAL LLC** by providing the financing (or pretending to do so) to procure fraudulently acquired or stolen art; to file court documents seeking possession of fraudulently acquired or stolen art, while concealing the role of this RICO Enterprise; and to otherwise appear as the

50

front-men and entities to successfully hide and disguise the

fraudulent and corrupt operations of this RICO Enterprise.

- Defendants **LAUREN BENRIMON** and **ALEX BENRIMON**,

   as, respectively, this RICO Enterprise's fine art advisor and the

   person responsible for sales, and for each, by providing advice,

   counsel, and experience in buying and selling works of art and in

   selecting the works of art to be bought and sold, in executing those

   purchases and sales.

**(3) With Respect to Defendant EZRA CHOWAIKI's Gallery (Chowaiki &
Co. Fine Art Ltd.) (as a RICO Enterprise):**

(i)      Each of the defendants was either employed by or associated with

this RICO Enterprise.

(ii)      Each of the defendants conducted and conducts or participated or

participates, directly or indirectly, in the conduct of such Enterprise's

affairs, *inter alia,* as follows:

- Defendant **EZRA CHOWAIKI** by making executive, managerial,

   operational, executive decisions of this RICO Enterprise.

- Defendants **DAVID BENRIMON FINE ARTS LLC**, **DAVID**

   **BENRIMON** and  **LINDA BENRIMON also known as LINDA**

   **ROSEN**, by making executive, operational, and managerial

   decisions related to the disposition of this RICO Enterprise's

   fraudulently acquired and stolen works of art; in illegally

   transporting them overseas; in executing and concealing such

   disposition; in arranging, coordinating, and concealing such

disposition, and the source of funds for such acquisitions and dispositions; in knowingly and intentionally laundering the proceeds of prohibited activity; in conceiving, coordinating, and supervising this RICO Enterprise and the Racketeering acts and activity and collection of unlawful debt by which this RICO Enterprise is conducted, and in executing and formulating its decisions.

- Defendants **AVICHAI ROSEN** and **PIEDMONT CAPITAL LLC** by providing the financing (or pretending to do so) to procure fraudulently acquired or stolen art; to file court documents seeking possession of fraudulently acquired or stolen art, while concealing the role of this RICO Enterprise; and to otherwise appear as the front-men and entities to successfully hide and disguise the fraudulent and corrupt operations of this RICO Enterprise.

- Defendants **LAUREN BENRIMON** and **ALEX BENRIMON**, as, respectively, this RICO Enterprise's fine art advisor and the person responsible for sales, and for each, by providing advice, counsel, and experience in buying and selling works of art and in selecting the works of art to be bought and sold, in executing those purchases and sales.

146.     Each of the defendants, in so conducting or participating, directly or indirectly, in the conduct of each such Enterprise's affairs, did so by the foregoing pattern of racketeering activity and by the collection of an unlawful debt, in violation of 18 U.S.C. § 1962 (c).

147.    Each of the defendants, conspired with each other (and with others currently unknown to plaintiff), to violate 18 U.S.C. § 1962 (c) with respect to each such RICO Enterprise - in violation of 18 U.S.C § 1962 (d).

148.    Plaintiff was injured as a result of the forgoing violations by defendants of 18 U.S.C. § 1962 (c) and (d).

## FIRST AND SECOND RICO CAUSES OF ACTION (PATTERN OF RACKATEERING ACTIVITY AND CONSPIRACY) WITH RESPECT TO DAVID BENRIMON FINE ART LLC.

149.    Plaintiff repleads the foregoing allegations of his Complaint.

150.    Defendants and each of them (other than defendant **DAVID BENRIMON FINE ART LLC**), who were all employed by or associated with defendant **DAVID BENRIMON FINE ART LLC** (as a RICO Enterprise), which was engaged in, or the activities of which affect, interstate or foreign commerce, conducted or participated, directly or indirectly, in the conduct of such Enterprise's affairs through the foregoing pattern of racketeering activity and plaintiff was injured thereby, in that his two works of art were unlawfully converted and stolen, all in violation of 18 U.S.C. § 1962 (c). Each of the defendants (including defendant **DAVID BENRIMON FINE ART LLC)** is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964 (c).

151.    Each of the defendants conspired with each other to violate 18 U.S.C. § 1962 (c), as set out in previous paragraph, and plaintiff was injured thereby, in that his two works of art were unlawfully converted and stolen, all in violation of 18 U.S.C. § 1962 (d). Each of the defendants is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964 (c).

**THIRD AND FOURTH RICO CAUSES OF ACTION (COLLECTION OF UNLAWFUL DEBT AND CONSPIRACY) WITH RESPECT TO DAVID BENRIMON FINE ART LLC.**

152.     Plaintiff repleads the foregoing allegations of his Complaint.

153.     Defendants and each of them, (other than defendant **DAVID BENRIMON FINE ART LLC**), who were all employed by or associated with defendant **DAVID BENRIMON FINE ART LTD.** (as a RICO Enterprise), which was engaged in, or the activities of which affect, interstate or foreign commerce, conducted or participated, directly or indirectly, in the conduct of such Enterprise's affairs through the collection of an unlawful debt and plaintiff was injured thereby, in that his two works of art were unlawfully converted and stolen, all in violation of 18 U.S.C. § 1962 (c).  Each of the defendants (including defendant **DAVID BENRIMON FINE ART LLC**) is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964 (c).

154.     Each of the defendants conspired with each other to violate 18 U.S.C. § 1962 (c), as set out in previous paragraph, and plaintiff was injured thereby, in that his two works of art were unlawfully converted and stolen, all in violation of 18 U.S.C. § 1962 (d).  Each of the defendants is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964 (c).

**FIFTH AND SIXTH RICO CAUSES OF ACTION (PATTERN OF RACKATEERING ACTIVITY AND CONSPIRACY) WITH RESPECT TO THE BENRIMON-CHOWAIKI ENTERPRISE.**

155.     Plaintiff repleads the foregoing allegations of his Complaint.

156.     Defendants and each of them, who were all employed by or associated with The BENRIMON-CHOWAIKI ENTERPRISE (as a RICO Enterprise), which was engaged in, or the activities of which affect, interstate or foreign commerce, conducted or participated, directly or indirectly, in the conduct of such Enterprise's affairs through the foregoing pattern of racketeering activity and plaintiff was injured thereby, in that his two works of art were

unlawfully converted and stolen, all in violation of 18 U.S.C. § 1962 (c).  Each of the defendants is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964 (c).

157.    Each of the defendants conspired with each other to violate 18 U.S.C. § 1962 (c), as set out in previous paragraph, and plaintiff was injured thereby, in that his two works of art were unlawfully converted and stolen, all in violation of 18 U.S.C. § 1962 (d).  Each of the defendants is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964 (c).

## SEVENTH AND EIGHTH RICO CAUSES OF ACTION (COLLECTION OF UNLAWFUL DEBT AND CONSPIRACY) WITH RESPECT TO THE BENRIMON-CHOWAIKI ENTERPRISE.

158.    Plaintiff repleads the foregoing allegations of his Complaint.

159.    Defendants and each of them, who were all employed by or associated with The BENRIMON-CHOWAIKI ENTERPRISE (as a RICO Enterprise), which was engaged in, or the activities of which affect, interstate or foreign commerce, conducted or participated, directly or indirectly, in the conduct of such Enterprise's affairs through the collection of an unlawful debt and plaintiff was injured thereby, in that his two works of art were unlawfully converted and stolen, all in violation of 18 U.S.C. § 1962 (c).  Each of the defendants is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964 (c).

160.    Each of the defendants conspired with each other to violate 18 U.S.C. § 1962 (c), as set out in previous paragraph, and plaintiff was injured thereby, in that his two works of art were unlawfully converted and stolen, all in violation of 18 U.S.C. § 1962 (d).  Each of the defendants is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964 (c).

## NINTH AND TENTH RICO CAUSES OF ACTION (PATTERN OF RACKATEERING ACTIVITY AND CONSPIRACY) WITH RESPECT TO CHOWAIKI & CO. FINE ART LTD.

161.    Plaintiff repleads the foregoing allegations of his Complaint.

162.     Defendants and each of them, who were all employed by or associated with defendant **EZRA CHOWAIKI's** Gallery (Chowaiki & Co. Fine Art Ltd.) (as a RICO Enterprise), which was engaged in, or the activities of which affect, interstate or foreign commerce, conducted or participated, directly or indirectly, in the conduct of such Enterprise's affairs through the foregoing pattern of racketeering activity and plaintiff was injured thereby, in that his two works of art were unlawfully converted and stolen, all in violation of 18 U.S.C. § 1962 (c). Each of the defendants is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964 (c).

163.     Each of the defendants conspired with each other to violate 18 U.S.C. § 1962 (c), as set out in previous paragraph, and plaintiff was injured thereby, in that his two works of art were unlawfully converted and stolen, all in violation of 18 U.S.C. § 1962 (d). Each of the defendants is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964 (c).

## ELEVENTH AND TWELFTH RICO CAUSES OF ACTION (COLLECTION OF UNLAWFUL DEBT AND CONSPIRACY) WITH RESPECT TO CHOWAIKI & CO. FINE ART LTD.

164.     Plaintiff repleads the foregoing allegations of his Complaint.

165.     Defendants and each of them, who were all employed by or associated with defendant **EZRA CHOWAIKI's** Gallery (Chowaiki & Co. Fine Art Ltd.) (as a RICO Enterprise) which was engaged in, or the activities of which affect, interstate or foreign commerce, conducted or participated, directly or indirectly, in the conduct of such Enterprise's affairs through the collection of an unlawful debt and plaintiff was injured thereby, in that his two works of art were unlawfully converted and stolen, all in violation of 18 U.S.C. § 1962 (c). Each of the defendants is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964 (c).

166.    Each of the defendants conspired with each other to violate 18 U.S.C. § 1962 (c), as set out in previous paragraph, and plaintiff was injured thereby, in that his two works of art were unlawfully converted and stolen, all in violation of 18 U.S.C. § 1962 (d).  Each of the defendants is jointly and severally liable to plaintiff pursuant to 18 U.S.C. § 1964 (c).

## THIRTEENTH CAUSE OF ACTION (CONSPIRACY).

167.    Plaintiff repleads the foregoing allegations of his Complaint.

168.    Each of the defendants knew or should have known of the illegal and fraudulent actions of the others, all as set out above (and specifically to deprive plaintiff and others of their works of art, and for defendants to profit thereby), and knowing this and intending that this continue, joined each other to form a conspiracy to continue the illegal and fraudulent actions of the others as set out above, and to engage in further illegal and fraudulent activities to their mutual benefit and to the detriment of others including plaintiff, and plaintiff has suffered and continues to suffer injury, in that his two works of art were unlawfully converted and stolen.

## FOURTEENTH CAUSE OF ACTION (COMMON LAW FRAUD).

169.    Plaintiff repleads the foregoing allegations of his Complaint.

170.    As a direct and proximate cause of the fraudulent actions and omissions of defendants as set out above, all of which were made with defendants' specific intent that plaintiff rely on those fraudulent acts, plaintiff has suffered and continues to suffer injury, in that his two works of art were unlawfully converted and stolen, and as otherwise set out in this complaint.

## FIFTEENTH CAUSE OF ACTION (CONVERSION).

171.    Plaintiff repleads the foregoing allegations of his Complaint.

172.    As a direct and proximate cause of the acts and omissions set out above, defendants, and each of them, have, with intent to do so, converted plaintiff's two works of art to

their use, benefit, and profit, and plaintiff has suffered and continues to suffer injury, in that his

two works of art were unlawfully converted and stolen, and he has been denied their use.

## SIXTEENTH CAUSE OF ACTION (UNJUST ENRICHMENT).

173.    Plaintiff repleads the foregoing allegations of his Complaint.

174.    Defendants were unjustly enriched at plaintiff's expense by keeping the Leger and

the Picasso, and then selling them to their benefit, without the consent of plaintiff and despite the

plaintiff's demand that they not do so, and in violation of plaintiff's ownership of the Leger and

Picasso, and plaintiff has suffered and continues to suffer injury, in that his two works of art

were unlawfully converted and stolen, and it is against  good conscience to permit defendants to

retain the fruits of their acts.

## REMEDIES AND DAMAGES.

175.    On each of the RICO Causes of Action, Causes of Action 1-12, plaintiff demands

from each of the defendants, jointly and severally, the value of the Leger and Picasso, as

determined at trial, but not less than $941,000.00, plus costs of their recovery, plus interest, such

combined amounts to be trebled, plus plaintiff's attorneys' fees.

176.    On each of the Causes of Action 13 (conspiracy), 14 (common law fraud), 15

(conversion), and 16 (unjust enrichment) plaintiff demands from each of the defendants, jointly

and severally, the value of the Leger and Picasso, as determined at trial, but not less than

$8500,000.00, plus interest, plus costs of their recovery.

177.    In addition, because of the nature of defendants' conduct and actions, on each of

the Causes of Action 13 (conspiracy), 14 (common law fraud), 15 (conversion), and 16 (unjust

enrichment) plaintiff demands, and is entitled to, an award of punitive and exemplary damages,

payable by defendants jointly and separately,  in an amount to be proven at trial, but not less than ten times the value of the Leger and Picasso.

178.    In addition, plaintiff demands such further relief as this court deems just.

## JURY TRIAL DEMANDED.

179.    Plaintiff respectfully demands trial by jury on all of his claims, as guaranteed by the Seventh Article of Amendment to the Constitution of the United States and otherwise.

WHEREFORE, plaintiff respectfully requests the entry of a judgment as set out above, together with all other relief as to this court seems just.

RESPECTFULLY SUBMITTED,

SIDNEY N. WEISS
*Attorney for Plaintiff, Alejandro*
*Domingo Malvar Egerique*
675 Third Avenue, Suite 2600
New York, New York 10017
1-212-986-5309
Mobile: 1-914-262-2346
snw@weisslaw.net

New York, New York
April 8, 2019